IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLONY NATIONAL INSURANCE COMPANY and AMERICAN HOME ASSURANCE COMPANY,   :    :    : | |
| Plaintiffs,   : | |
| v.   : | 3:13-CV-00401 |
|    : | (JUDGE MARIANI) |
| DeANGELO BROTHERS, INC. and UNION PACIFIC RAILROAD CO.,   :    : | |
| Defendants.   : | |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Dismiss or to Drop a Party (Doc. 7), filed by Defendant DeAngelo Brothers, Inc., which is based on the allegation that DeAngelo has no stake in this declaratory judgment action. For the reasons discussed below, the Court will deny DeAngelo's Motion.

### II. Factual Allegations and Procedural History

On February 14, 2013, Plaintiff Colony National Insurance filed a Complaint[1] (Doc. 1) in the Middle District of Pennsylvania, seeking a declaration to resolve the scope of its obligations to provide coverage on an excess commercial liability insurance policy. (*See* Compl., Doc. 1, at ¶¶ 2-3.) That Complaint alleges the following facts.

---

[1] Current Plaintiff American Home was not an original Plaintiff, and thus not a party to this Complaint, but rather intervened as a Plaintiff later on. (*See generally* Op. and Order, Jan. 9, 2014, Doc. 44 (granting motion to intervene).)

In 2006, a car collided with a Union Pacific Railroad train at a Union Pacific grade crossing in Oklahoma, killing one passenger and severely injuring another. (*Id.* at ¶ 17.) That accident gave rise to a lawsuit in Oklahoma state court ("the Oklahoma action") against Union Pacific and the driver of the car, both of whom were alleged to have negligently contributed to the accident. (*Id.* at ¶ 16.) Though Union Pacific is named as a defendant in this Middle District of Pennsylvania[2] Complaint ("the Pennsylvania action"), the driver is not. Conversely, DeAngelo Brothers, the moving party behind the present motion, though a defendant in the Pennsylvania action, was not a party to the Oklahoma lawsuit. (*Id.* at ¶ 20.)

During the time of the underlying accident, DeAngelo Brothers contracted with Union Pacific to "perform certain vegetation control services at public grade crossings throughout [Union Pacific's] railroad system." (*Id.* at ¶ 21.) The contract required DeAngelo Brothers to indemnify Union Pacific for, among other things, all liability arising from the injury or death of another person that was "associated with the Contractor's [i.e., DeAngelo Brothers'] Work performed under this Agreement, a breach of the Agreement, the Contractor's failure to observe the health and safety provisions of the Agreement, or any activity or omission arising out of performance or nonperformance of this Agreement." (*Id.*, Ex. B, at § 13A.) However, the contract also provided that "the Contractor shall not indemnify the Railroad for any portion of the loss caused by the Railroad." (*Id.*)

---

[2] As discussed below, Union Pacific Railroad also filed its own declaratory judgment action in the District of Nebraska against Colony National Insurance Company, DeAngelo Brothers, and American Home Assurance Company.

2

As part of the indemnification provision, the contract required DeAngelo Brothers to procure and maintain Commercial General Liability Insurance with a single limit of at least $5,000,000.00 for each occurrence or claim and an aggregate limit of at least the same, which was required to cover, among other things, bodily injury and death. (*Id.*, Ex. B, at § 4A.) It appears from the Complaint and contract that DeAngelo Brothers could, but was not required to, also utilize "umbrella or excess policies." (*Id.* at ¶ 26; *id.*, Ex. B., at § 4E.) The contract required that Union Pacific be listed as an additional insured on all of the policies at issue. (*Id.*, Ex. B, at § 4.)

DeAngelo Brothers procured commercial general liability insurance from Plaintiff American Home Assurance Company and commercial liability umbrella insurance from Plaintiff Colony Insurance. (*Id.* at ¶¶ 28, 35; *see also id.*, Ex. C (American Home policy); *id.*, Ex. D (Colony policy).) On neither contract was Union Pacific listed as an additional insured, though Colony appears to admit in its Complaint that Union Pacific is covered under both policies. (*See* Compl. at ¶¶ 30-31, 37-38.) The American Home policy had an each occurrence limit of $1,000,000.00 and a general aggregate limit of $2,000,000.00, (*id.*, Ex. C, at 3), whereas the Colony policy had a $5,000,000.00 limit for both types, (*id.*, Ex. D, at 2). These policies were in force when the accident occurred and when the subsequent state-court litigation in Oklahoma ensued.

In late December 2012, in the midst of the Oklahoma litigation, Colony alleges that Union Pacific suddenly provided Colony "with a history of the various settlement offers

exchanged between the parties [to the Oklahoma lawsuit] to date, including demands made by the underlying plaintiffs and offers made by [Union Pacific] that were reasonably likely to result in liability on Colony's part." (*Id.* at ¶ 50.) Union Pacific then "demanded the full $5,000,000 limits of the Colony Policy to settle the Underlying Action prior to trial," allegedly in a hurried manner and without full disclosure of Union Pacific's defense file. (*Id.* at ¶¶ 51-54.) Ultimately, Union Pacific did settle, for $6,500,000.00. (*Id.* at ¶ 55.) Colony never indemnified Union Pacific for the settlement. Instead, it disputes Union Pacific's entitlement to coverage, on the grounds that (1) Union Pacific was most at fault for the collision, and therefore not entitled to indemnity under insurance procured to cover DeAngelo Brothers' own acts or omissions, (*see id.* at ¶¶ 44-48), and (2) Union Pacific did not adequately cooperate with Colony in the investigation or settlement of the case or properly notify it of or seek its consent before agreeing to any settlement offers, (*see id.* at ¶¶ 49-56).

Colony then filed this Complaint seeking a declaration of (1) the allocation of fault for the accident between Union Pacific and DeAngelo Brothers, (*see id.* at ¶¶ 57-62), and (2) the amount of excess insurance coverage to which Union Pacific is entitled under Colony's policy, (*see id.* at ¶¶ 63-70).

Colony's Complaint was filed on February 14, 2013. Shortly thereafter, on March 13, 2013, Union Pacific filed its own action in the United States District of Nebraska ("the Nebraska action"), naming Colony, American Home, and DeAngelo Brothers as Defendants. *See generally Union Pac. R.R. v. Colony Nat'l Ins. Co.*, 8:13-cv-00084 (D.

4

Neb. 2013). The Complaint in that case alleged a series of declaratory-judgment and common-law and statutory claims against Colony and American Home. *See id.*, Compl., Doc. 1, at ¶¶ 17-42. But most importantly for present purposes, it alleged a claim entitled "Contractual Indemnity and/or Contribution" against DeAngelo Brothers, which asserted that DeAngelo was liable to cover the costs of all settlement payments which Union Pacific made in the Oklahoma lawsuit to the extent not covered by the insurers. *Id.* at ¶¶ 15-16.

A review of the docket in the Nebraska action, as accessed through PACER, indicates that summonses were issued to all three Defendants on March 13. It is unclear if the summons was ever executed upon DeAngelo Brothers and no attorney appears to have entered an appearance in that case on DeAngelo's behalf. Nonetheless, a mere six days after the issuance of summons in the Nebraska action, DeAngelo filed the Motion to Dismiss that is the subject of this Opinion, arguing essentially that it should be dropped as a party to the Pennsylvania action because it did not have a stake in it, as the Pennsylvania action allegedly concerns only the extent of liability between Union Pacific and the two insurers. (*See* Brief in Supp. of DeAngelo Bros.' Mot. to Dismiss or to Drop a Party, Doc. 9, at 3-4.)

While this and other motions were pending in Pennsylvania, the Nebraska court was faced with its own motion to dismiss under the "first-filed" rule, whereby the first case to which jurisdiction attaches has priority to consider a case. *See* Mem. Op., July 12, 2013, 8:13-cv-00084, Doc. 38, at 6-7 (quoting *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Emps. Ret. Sys.*, 57 F.3d 638, 640 n.3 (8th Cir. 1995)). However, the

Nebraska court found that, even though "the interests of justice" as applied through the first-filed rule indicated that Pennsylvania was the better forum for resolution of the dispute, outright dismissal was premature, given that the Pennsylvania court's decision of our pending motions could alter the jurisdictional landscape and cause Nebraska to become an appropriate forum. *See id.* at 15-16. Accordingly, rather than dismiss the action, the Nebraska court stayed it pending our resolution of the then-pending motions. *Id.* at 16. It is in light of this somewhat complex procedural history that DeAngelo Brothers' Motion to Dismiss or to Drop a Party must be considered.

### III. Standard of Review

#### a. Motion to Dismiss

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### b. Motion to Drop a Party

If a party is only misjoined to an action, a motion to dismiss may be unnecessary. Federal Rule of Civil Procedure 21 provides: "Misjoinder of parties is not a ground for

7

dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; see also DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006). "When a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice. When that occurs . . . we treat the initial complaint as if it never existed" against the dropped defendant. DirecTV, 467 F.3d at 845 (internal quotations and citations omitted).

## IV. Analysis

### a. DeAngelo's Argument

Both in the context of the Motion to Dismiss and the Motion to Drop a Party, DeAngelo Brothers argues that it does not have an interest in the Pennsylvania declaratory-judgment action.[3] (See Doc. 9 at 7, 12.) As DeAngelo states, the Pennsylvania Complaint, "which asks this Court to determine the amount, if any, for which [Colony] is actually required to indemnify [Union Pacific] as an additional insured under the Umbrella Policy," implicates "a contractual duty" between Colony and Union Pacific "which is independent and distinct from any duties which [DeAngelo] and Colony owe each other under the Umbrella Policy." (Id. at 2-3.) Thus, even though the present action requests an allocation of fault for the underlying accident between Union Pacific and DeAngelo, this is only requested to determine whether and to what extent Colony actually owes Union Pacific coverage under the policy, given that the contract between Union Pacific and DeAngelo required that Union

---

[3] Because the factual bases on which DeAngelo Brothers seeks relief are the same for both Rules 12(b)(6) and 21, the Court will treat the Rules together in the discussion that follows.

8

Pacific was only entitled to collect from the insurance policies if *DeAngelo* were at fault for the relevant occurrence. Therefore, DeAngelo concludes that, regardless of who is found at fault for the underlying accident in the Pennsylvania action, DeAngelo's rights would not be affected in any way. (*See* Reply Brief in Supp. of Mot. to Dismiss or to Drop a Party, Doc. 34, at 6-7.)

### b. Justiciable Controversies under the Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has held that the Declaratory Judgment act applies only to "cases and controversies in the constitutional sense," which means

> one[s] that [are] appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937). In other words, as DeAngelo Brothers correctly notes,

9

"[d]eclaratory judgment is not appropriate to determine rights in anticipation of events which may never occur." (Doc. 34 at 5 (citing *Hayes v. Pittsburgh Bd. of Pub. Educ.*, 2007 WL 760518, at *16 (W.D. Pa. 2007).) Rather, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).

The Third Circuit has adopted a three-part test to determine whether a declaratory judgment action presents a justiciable controversy: "specifically, we examine 'the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment.'" *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). However, while the Circuit considers these three to be "the most important" principles, *Step-Saver*, 912 F.2d at 647, "the foregoing factors are not exhaustive of the principles courts have considered in evaluating ripeness challenges," *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992).

If it were not for the existence of the Nebraska action, this Court might agree that the dispute between DeAngelo and the insurers is merely abstract or hypothetical. In the absence of the Nebraska action, the only controversy at issue would be the extent to which

Colony and American Homes are liable to pay Union Pacific, based on the insurance policies, and Colony's attempts to find other bases for a controversy might appear unavailing. Thus, Colony writes:

> [I]f Union Pacific can prove that [it] is entitled to the limits of the Colony policy because its potential liability at trial in the underlying lawsuit was based only on [DeAngelo Brothers'] work, the limits of the Colony policy would be exhausted and there would be no coverage available to [DeAngelo] under the policy for any other covered claim. For this reason, Union Pacific's demand for the full limits of the Colony policy issued to [DeAngelo] clearly implicates [DeAngelo's] interest in the policy thereby making [DeAngelo] a necessary party to this action.
>
> [Alternatively, if Colony is not liable for the full amount of coverage demanded, and DeAngelo's] work is determined to be the basis of Union Pacific's liability in the underlying action as Union Pacific contends, [DeAngelo] itself would be responsible for funding the uninsured portion of the loss in accordance with its contractual indemnity obligation to Union Pacific. A judicial declaration concerning the amount of [DeAngelo's] uninsured coverage gap likewise implicates [DeAngelo's] interest in the Colony policy and makes [DeAngelo] a necessary party.

(Pl. Colony Nat'l Ins. Co.'s Brief in Opp. to Mot. to Dismiss, Doc. 14, at 2-3.) Such abstract speculation about future indemnity actions, or about the exhaustion of insurance coverage for hypothetical claims unrelated to this lawsuit, appears to improperly rely on conjecture about "contingent future events that may not occur as anticipated, or indeed may not occur at all" and may be insufficient to make DeAngelo a proper party to the Pennsylvania lawsuit. *See Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 453 (3d Cir. 2001).

However, the Court need not rule on these other bases for denying the Motion, because the actual filing of the Nebraska action—which is a fact that this Court cannot

11

ignore or deny under the Supreme Court's direction in *Maryland Casualty Co.*, 312 U.S. at 273, to view "the facts alleged, under all the circumstances"—changes the analysis.[4] The Nebraska action brings the litigation between DeAngelo and the insurers out of the realm of abstraction and into the realm of a concrete controversy which this Court may properly adjudicate. A review of the *Step-Saver* and other relevant factors can explain why.

### i. Adversity

"In assessing the adversity of the parties' interest, courts look to '[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm.'" *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (quoting *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001)). "It is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest

---

[4] Even though the Nebraska action is not mentioned in the Complaint or in DeAngelo Brothers' moving papers, "Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (quoting Fed. R. Evid. 201). The Third Circuit continued: "A number of our sister circuits have held that [Rule 201] permits a court, in deciding a motion for judgment on the pleadings, to take judicial notice of properly-authenticated public disclosure documents filed with the SEC. . . . We find this reasoning persuasive." *Id.* One of those sister circuits cited by *Oran* explained the matter thusly: "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

The existence of the Nebraska action is undoubtedly a proper subject of judicial notice, as its existence "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), and which are at least as trustworthy as the SEC public-disclosure documents found to be properly noticed in *Oran*. The full Nebraska case docket is publicly available on PACER and a copy of the Nebraska Opinion staying the motions to dismiss was submitted to this Court via CM/ECF (*see* Doc. 43), which filing was never objected to by opposing counsel. Therefore, the fact that the Nebraska action was not discussed in the Complaint is not dispositive of the Motion to Dismiss.

so long as there is a *substantial threat of real harm* that remains throughout the course of the litigation." *Id.* (emphasis added).

The pendency of the Nebraska action means that DeAngelo Brothers' interests will almost certainly be litigated somewhere. If DeAngelo is dismissed as a defendant in this case, then we can expect the Nebraska action to proceed against it. And even though the various parties' interests may align differently in the two actions, it is nonetheless not difficult to anticipate a "real and substantial threat of harm" arising between DeAngelo and the insurers. For example, the extent to which this Court could find that DeAngelo was at fault for the accident could affect the amounts of contribution to be apportioned among all three Defendants in the Nebraska action. As another example, there are disputes between DeAngelo and Colony over whether an "uninsured gap in coverage" exists. (*See* Doc. 14 at 13-14; Doc. 34 at 9-14.) Such a gap in coverage would limit Union Pacific's ability to recover insurance proceeds from Colony. In the absence of the Nebraska action, this would not necessarily give DeAngelo a stake in the Pennsylvania proceedings, as discussed above. However, because there is an indemnification action actually pending against DeAngelo in Nebraska, this means that, if this Court were to find that such a gap in coverage did exist, then DeAngelo's potential liability in the Nebraska action would suddenly increase. Thus, this Court's construction of terms in a contract that facially only concerns Colony and Union Pacific will have a direct impact on DeAngelo's rights in a pending action that can be certain to resume against DeAngelo if DeAngelo is dismissed from this case.

### ii. Conclusiveness

Conclusiveness, the second factor, "requires us to consider the fitness of the issue for adjudication to ensure that the declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts." *Surrick*, 449 F.3d at 528. Even though "by its nature a declaratory judgment will almost always have some conclusive effect," the conclusiveness factor requires the Court to determine whether a "live controversy" exists that can be resolved through a judicial determination, and that the Complaint does not ask for a mere advisory opinion. *See Armstrong*, 961 F.2d at 421-23.

In the present case, a declaratory judgment would be conclusive, because it would, first, provide the basis on which the Nebraska action would either proceed or discontinue and, second, if it prompts the Nebraska action to proceed, it would determine the permissible scope of DeAngelo's liability in that action. Unlike the paradigmatic unconclusive declaratory judgment action,[5] this case does not require the Court to speculate about hypothetical disputes. Rather, a determination would conclusively resolve Union Pacific and DeAngelo's relative fault in an accident that actually occurred, and thereby resolve the scope of insurance coverage owed to Union Pacific. DeAngelo may

---

[5] For an example of such a case, see *Operation Clean Gov't v. Rhode Island Ethics Comm'n*, 315 F. Supp. 2d 187, 195 (D.R.I. 2004) (dismissing a declaratory judgment claim that sought to enjoin an allegedly unconstitutional statute, when the request for an injunction was based only on the prospects of future enforcement of the statute, which was "dependent on so many different factual contingencies that it may never occur").

have a smaller stake in this decision than Union Pacific, but given the indemnification action against it in Nebraska, it does have a real stake that may be conclusively determined.

### iii. Utility

Finally, the third *Step-Saver* factor, utility, heavily weighs in favor of keeping DeAngelo as a defendant in the Pennsylvania action. The utility inquiry "requires us to consider whether a declaratory judgment will affect the parties' plans of actions by alleviating legal uncertainty." *Surrick*, 449 F.3d at 529. It is based on the broad goal of the Declaratory Judgment Act "to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Step-Saver*, 912 F.2d at 649.

Dropping DeAngelo as a defendant would only frustrate the Act's goal of providing legal clarity. For one thing, it would open up the possibility of inconsistent judgments, wherein the determination of relative fault in Pennsylvania—which would not be binding on DeAngelo—might differ sharply from that in Nebraska, thus exposing Colony, American Homes, and Union Pacific to inconsistent obligations.[6] Dropping DeAngelo may also require piecemeal litigation, wherein the insurers' coverage obligations are determined in Pennsylvania, while DeAngelo's liability for indemnification is determined in Nebraska—an inefficient and unsatisfactory outcome given that the two issues are so inextricably intertwined. It seems that the better approach is to resolve matters of liability fully between

---

[6] This and the sentences that follow presume, for purposes of analysis only, that the case would continue against Union Pacific in Pennsylvania, following the Court's resolution of Union Pacific's Motion to Dismiss. The Court has made no decision at this time on Union Pacific's pending Motion.

all parties in Pennsylvania, and then to allow whatever claims were not resolved here to be resolved upon the resumption of the Nebraska action.

### iv. Other Considerations

Even though the Court finds that the three *Step-Saver* factors weigh in favor of maintaining DeAngelo Brothers as a defendant in this case, there may be other factors that weigh in favor of dismissing or dropping it. *See Armstrong*, 961 F.2d at 412 ("[T]he foregoing factors are not exhaustive of the principles courts have considered in evaluating ripeness challenges.").

One such factor is the specter of forum-shopping. There is a pending motion alleging that Pennsylvania does not have personal jurisdiction over Union Pacific. (*See* Doc. 15). DeAngelo Brothers has made allegations that it was only added as a defendant in this case because, as a Pennsylvania company, it provided a Pennsylvania forum for the insurance companies where otherwise there would be none. (*See* Doc. 9 at 11). However, because the Court finds that DeAngelo is a proper defendant in the Pennsylvania action, this allegation loses its force.

Nor can the Court see a large threat of forum-shopping in Union Pacific's decision to file the case in Nebraska. Even if the Court were to assume that the filing of the Nebraska action violated the first-filed rule, it does not appear that any untoward advantage was gained thereby. Barring a favorable decision on the Motion to Dismiss for Lack of Personal Jurisdiction, litigation will still proceed against all parties in Pennsylvania, as originally

contemplated. Pennsylvania, after all, is DeAngelo's principal place of business, (Compl. at ¶ 5), and the state from which DeAngelo entered into its contract with Union Pacific, so litigating here does not appear facially unjust. Therefore, the only real effect of Union Pacific's filing the Nebraska action was to make concrete the prospect of further litigation against DeAngelo. Because Union Pacific was free at any time to pursue further litigation against DeAngelo, the fact that it has made its intentions to do so plain only aids in the resolution of this case, thus avoiding unnecessary speculation, and does not appear to be an example of jurisdictional gamesmanship.

Accordingly, the Court sees no reason under *Step-Saver* or other applicable factors to dismiss or drop DeAngelo Brothers as a defendant.

## V. Conclusion

For the foregoing reasons, Defendant DeAngelo Brothers' Motion to Dismiss or to Drop a Party (Doc. 7) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge