IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLONY NATIONAL INSURANCE CO. and AMERICAN HOME ASSURANCE CO., : : : : : Plaintiffs, : : v. : : DeANGELO BROTHERS, INC. : and UNION PACIFIC RAILROAD CO., : : Defendants. : | 3:13-CV-00401 (JUDGE MARIANI) |

FILED
SCRANTON
MAR 28 2014
PER _____ DEPUTY CLERK

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 15), filed by Defendant Union Pacific Railroad in this declaratory judgment action. For the reasons discussed below, the Court will deny the Motion without prejudice, with leave to be resubmitted following the completion of jurisdictional discovery.

### II. Factual Allegations and Procedural History

The factual background of this case was discussed in the Court's Memorandum Opinion of March 21, 2014, in which the Court denied Defendant DeAngelo's Brothers' Motion to Dismiss or to Drop a Party. (*See generally* Doc. 53 at 1-6.) That background discussion is incorporated herein.

In the present Motion, Defendant Union Pacific Railroad seeks dismissal on the grounds that it is not subject to personal jurisdiction in Pennsylvania. It argues that there "is no basis for general or specific personal jurisdiction" in Pennsylvania, (see Def. Union Pac. R.R. Co.'s Reformatted Brief in Supp. of Mot. to Dismiss, Doc. 33, at 19), and, therefore, "[e]xercising personal jurisdiction over Union Pacific Railroad in this case would be unconstitutional," (id. at 5).

In support, Union Pacific provides a sworn affidavit stating that it is a corporation incorporated in Delaware with a primary place of business in Nebraska. (See Aff. of Maureen Fong Hinners, Doc. 15-1, at ¶ 2.) Moreover, as it argues in its supporting brief,

> Union Pacific has no offices in Pennsylvania. It does not run its trains through Pennsylvania. It does not pay corporate income or franchise tax to Pennsylvania. It does not advertise specifically to Pennsylvania citizens or corporations. It does not maintain an agent in Pennsylvania. In summary, Union Pacific Railroad does not "continuously and systematically" conduct any business in Pennsylvania.

(Doc. 33 at 9-10 (internal citations omitted).) According to Hinners, "Union Pacific Railroad's rail network covers 23 states in the western two-thirds of the United States." (Doc. 15-1 at ¶ 3.) A map provided with Hinners' declaration shows no Union Pacific rail routes east of Chicago. (See id., Ex. 1, at 4.) And while Union Pacific did enter into a contract with DeAngelo Brothers, a Pennsylvania company, to do work implicated in this lawsuit, according to a sworn affidavit by DeAngelo Brothers' President Paul DeAngelo,

> [t]his agreement was the result of a national on-line bidding process through which [DeAngelo Brothers] submitted the winning bid. Union Pacific had placed its request for bids for vegetation services on the internet. My company submitted a bid to Union Pacific after seeing this online request for proposal. In submitting our bid [DeAngelo Brothers] reached out to Union Pacific in Nebraska. Union Pacific did not approach [DeAngelo Brothers] in Pennsylvania.

(Aff. of Paul D. DeAngelo, Doc. 15-2, at ¶ 2.) Moreover, to the best of affiant Paul DeAngelo's knowledge, "Union Pacific signed the contract in Omaha, Nebraska. [The affiant has] no knowledge that Union Pacific executed the contract in Pennsylvania." (*Id.* at ¶ 4). Moreover, DeAngelo Brothers' "performance under the agreement takes place wholly outside the Commonwealth of Pennsylvania. No part of the agreement is performed in Pennsylvania. [DeAngelo Brothers] does not provide services to Union Pacific in Pennsylvania." (*Id.* at ¶ 5).

Union Pacific acknowledges "three employees located in Pennsylvania, who work out of their homes." (Doc. 33 at 10.) However, according to affiant Hinners,

> [t]hese employees do not work exclusively in Pennsylvania. Rather, they travel throughout the Eastern United States. Their job tasks are to coordinate with Union Pacific Railroad's customers and with other carriers in order to arrange interchange of the customers' goods from eastern railroads to Union Pacific Railroad's western rail system.
>         These employees only perform a marketing function for Union Pacific Railroad. None holds a position with the authority to make management or executive decision on behalf of Union Pacific Railroad. These employees do not maintain the main business records and the files of Union Pacific Railroad, which are kept in Nebraska. These employees are not designated or authorized to accept service of process nor are they registered as agents for Union Pacific Railroad in the Commonwealth of Pennsylvania.

(Doc. 15-1 at ¶¶ 7-8.) These employees, who make up 0.0065% of Union Pacific's 45,928-employee workforce, (see id. at ¶ 4), "played absolutely no role in the negotiations between [DeAngelo Brothers] and Union Pacific Railroad," (id. at ¶ 16).

In response, Colony[1] argues that jurisdiction exists for several reasons. First, Union Pacific entered into a "five-year, multi-million dollar contract with" DeAngelo Brothers, a Pennsylvania corporation. (See Pl. Colony Nat'l Ins. Co.'s Brief in Opp. to Union Pac. R.R. Co.'s Mot. to Dismiss, Doc. 37, at 9.) This contract, it is reasonable to assume, was signed by DeAngelo Brothers in Pennsylvania and would have required significant correspondence between Union Pacific's Nebraska offices and DeAngelo's Pennsylvania offices. (See id. at 10-12.) Colony concludes that, through these acts, Union Pacific willing subjected itself to jurisdiction in Pennsylvania. (See id. at 15.)

Second, Colony points to several documents which it believes "demonstrate unequivocally that Union Pacific engages in economic activity in, and has continuous and systematic contacts with, various states east of the Mississippi [River] including Pennsylvania." (Id. at 17.) To this end, it provides a screenshot from Union Pacific's website, which advertises under the heading "Where Can I Ship?" that

> Union Pacific operates 32,000 miles of track covering 23 states in the western two-thirds of the country. And when we can't transport your products on our own tracks, we have relationships with nearly 200 shortline and other Class I railroads, as well as trucking companies, to make sure our customers are

---

[1] American Home intervened as a Plaintiff later in this case, (see Doc. 44), and filed a Brief in Opposition to Union Pacific's Motion to Dismiss, (see Doc. 45). The arguments in that brief closely match those raised in Colony's brief, discussed herein.

4

covered coast-to coast. . . . Factor in ocean carriers and you can use UP to ship to virtually any destination worldwide.

(*Id.*, Ex. D, at 1.) Likewise, a Form 10-K report filed by Union Pacific with the Securities and Exchange Commission describes its railroad routes as "linking Pacific Coast and Gulf Coast ports with the Midwest and eastern U.S. gateways." (*Id.*, Ex. E, at 6). The report adds that Union Pacific "serve[s] the western two-thirds of the country and maintain[s] coordinated schedules with other rail carriers to move freight to and from the Atlantic Coast" and other regions across North America. (*Id.*)

"With respect to Union Pacific's activities as a transporter of freight in states like Pennsylvania where it does not operate trains or own rails," Colony also provides the Court with the case numbers of three actions in the federal district courts of Pennsylvania "where Union Pacific has filed suit . . . against a Pennsylvania corporation or limited liability company based on its alleged failure to pay Union Pacific's freight charges when due." (*Id.* at 18.)[2] Colony argues that "[b]ased solely on Union Pacific's own allegations in these lawsuits, this Court has a reasonable basis for concluding that Union Pacific routinely

---

[2] These cases, as verified through PACER, are: *Union Pacific Railroad Co. v. Produce Services and Logistics, Inc.*, 2:12-cv-00050 (W.D. Pa. 2012); *Union Pacific Railroad Co. v. USB Group, LLC*, 2:09-cv-01499 (W.D. Pa. 2009); and *Union Pacific Railroad Co. v. Mich-Kim, Inc.*, 2:08-cv-03766 (E.D. Pa. 2008).
Colony also notes two antitrust actions filed in the Eastern District of Pennsylvania, in which Union Pacific, among other defendants, was alleged to have engaged in price-fixing. (*See* Doc. 37 at 19 n.7.) These cases, again verified through PACER, are: *Quality Refractories Installation, Inc. v. Association of American Railroads*, 2:07-cv-02657 (E.D. Pa. 2007); and *Nizhnekamskneftekhim USA, Inc. v. CSX Transportation, Inc.*, 2:07-cv-02809 (E.D. Pa. 2007). However, the probative value of the antitrust cases is low given that, as Colony states, in those cases Union Pacific only "does not appear to have contested" jurisdiction as a defendant in the case. (*See* Doc. 37 at 19 n.7.) But the negative act of failing to contest jurisdiction is qualitatively different from the positive act of asserting that jurisdiction does indeed exist.

5

engages in commerce in the Commonwealth." (*Id.* at 19.) As noted in American Home's brief, the purpose of disclosing these cases is not to argue that Union Pacific has waived jurisdictional objections; it is only to show, by Union Pacific's own previously sworn admissions, that Union Pacific continuously transacts business in Pennsylvania. (*See* Am. Home Assurance Co.'s Brief in Opp. to Union Pac. R.R. Co.'s Mot. to Dismiss, Doc. 45, at 7.)

Finally, Colony argues that the fact that three Union Pacific employees live in Pennsylvania is likewise sufficient to establish contacts supporting jurisdiction. (*See* Doc. 37 at 19-20.) In screenshots from the Union Pacific website, dated April 19, 2013, Union Pacific was soliciting job applications for two apparently additional positions located in Philadelphia, Pennsylvania: an administrative assistant and a control-systems engineer. (*Id.*, Ex. K, at 5-8.) As of the date of this Opinion, a job seeker can still access the Union Pacific website to search for jobs in Pennsylvania (and, indeed, for jobs in all states except West Virginia), but there are no Pennsylvania openings posted.  *See* UNION PACIFIC, *Careers*, https://up.jobs/index.html (click "Search Jobs;" then choose "Pennsylvania – PA" from the dropdown menu entitled "State Only;" then click "Add").

### III.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction over itself. Fed. R. Civ. P. 12(b)(2). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint

as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (internal citations omitted). Because a 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings," once the defense has been raised, the plaintiff must rely on "competent evidence" and not merely "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). However, if "the district court does not hold an evidentiary hearing, 'the plaintiff[s] need only establish a *prima facie* case of personal jurisdiction.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3rd Cir. 2007)).

IV. <u>Analysis</u>

a. In General

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). United States Supreme Court decisions in the past several decades "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d

796 (2011). Pennsylvania law authorizes general personal jurisdiction over a corporation when the corporation carries on "a continuous and systematic part of its general business within this Commonwealth," 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii), and authorizes specific jurisdiction over "all persons [including corporations] who are not within the scope of section 5301 . . . to the fullest extent allowed under the Constitution of the United States [which] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," 42 Pa. Cons. Stat. Ann. § 5322(b).

The existence of both general and specific jurisdiction is in dispute in the present case. Accordingly, the Court shall now turn to an analysis of both types.

### b. General Jurisdiction

"When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984). All such exercises of jurisdiction over a nonresident defendant (including a corporation) must comport with the Due Process Clause of the Fourteenth Amendment, which requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotation marks omitted). "Even when the cause of action does not arise out of or relate to

the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros*, 446 U.S. at 414, 104 S. Ct. at 1872.

The Supreme Court has long held that, for the exercise of personal jurisdiction to be constitutionally sufficient over a nonresident defendant, such defendant must have "continuous and systematic" contacts with the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S. Ct. 413, 419-20, 96 L. Ed. 485 (1952); *see also Helicopteros*, 466 U.S. at 416, 104 S. Ct. at 1873. Exactly how "continuous and systematic" the contacts must be remained unclear for many years. Recently, however, the Supreme Court provided some clarity when it held jurisdiction could only attach against an out-of-state corporate defendant when that defendant's contacts were so "'continuous and systematic' as to render [it] *essentially at home in the forum State*." *Goodyear*, 131 S. Ct at 2851 (emphasis added).[3]

---

[3] American Home argues, without citation to any authority, that *Goodyear* and related cases do not "require[] a corporation to be 'at home' or have its principal place of business in a forum state in order for general jurisdiction to apply. Those circumstances are merely illustrative." (Doc. 45 at 7.) It is hard to comprehend how this is so, based on a fair reading of the *Goodyear* opinion. *Cf., e.g., Goodyear*, 131 S. Ct. at 2857 ("Measured against *Helicopteros* and *Perkins*, North Carolina is not a forum in which it would be permissible to subject petitioners to general jurisdiction. Unlike the defendant in *Perkins*, whose sole wartime business activity was conducted in Ohio, petitioners are in no sense at home in North Carolina."). Moreover, in the years since Goodyear, Pennsylvania district courts have indeed treated the "at home" language as a precedential requirement, and not illustrative. *See, e.g., Cavanaugh v. Norton*, 2014 WL 980815, at *3 (M.D. Pa. 2014); *Xia Zhao v. Skinner Engine Co.*, 2012 WL 5451817, at *5 (E.D. Pa. 2012); *Munsif v. Am. Bd. of Internal Med.*, 2012 WL 3962671, at *6 (E.D. Pa. 2012).

Here, even if the Court were to find that all of the Plaintiffs' allegations concerning jurisdiction were true, general jurisdiction could still not apply. The facts that Union Pacific has entered into a series of contracts with Pennsylvania companies (as attested to by its various lawsuits here), that it maintains several employees in Pennsylvania, and that it contracts to ship goods to Pennsylvania, while establishing some consistent contacts with the forum state, are insufficient to render it "essentially at home" here. On this issue, the *Helicopteros* decision, which was cited heavily by the *Goodyear* Court, provides a helpful illustration. There, the Supreme Court held that a foreign company which "does not have a place of business in Texas and never has been licensed to do business in the State" could not be subject to general jurisdiction in Texas. *Helicopteros*, 466 U.S. at 416, 104 S. Ct. at 1873.

> Basically, Helicol's [a Colombia corporation] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter [a corporation doing business in Texas] for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training.

*Id.*

Union Pacific's acts of contracting with Pennsylvania corporations,[4] whether for services performed inside or outside of Pennsylvania, as well its maintenance of a few low-

---

[4] As discussed above, (*see* pp. 5-6, *supra*), the Court only reads the evidence of Union Pacific's litigation in Pennsylvania courts to be judicially-noticed evidence of Union Pacific's contacts with Pennsylvania, and not as evidence of whether Union Pacific has admitted in the past that jurisdiction over it in Pennsylvania is proper. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Co. of Ireland, Ltd. v. Compagnie des*

10

level employees in Pennsylvania, if accepted as true for purposes of the present Motion, do not appear more "continuous and systematic" than those in *Helicopteros*, where an out-of-state defendant also negotiated with an in-state plaintiff and also accessed the forum state for certain occasional services. Therefore, the factual allegations laid out in the insurers' Complaint and Briefs in Opposition to the present Motion do not state a *prima facie* case for general jurisdiction under *Goodyear* or *Helicopteros*.

### c. Specific Jurisdiction

Even though general jurisdiction does not exist, specific jurisdiction may still attach. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe*, 326 U.S. at 319, 66 S. Ct. at 160). A state may "assert specific jurisdiction over an out-of-state defendant who has not consented to suit there" only if "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (internal citations and quotation marks omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 558, 567, 62 L. Ed. 2d 490 (1980).

---

*Bauxites de Guinee*, 456 U.S. 694, 703, 102 S. Ct. 2099, 2105, 72 L. Ed. 2d 492 (1982). Thus, whether Union Pacific waived a personal jurisdiction defense as a plaintiff or defendant in previous Pennsylvania lawsuits is irrelevant here.

11

In the case of *J. McIntyre Machinery Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011), decided the same day as *Goodyear, supra*, a plurality of the Supreme Court elaborated on what connections are necessary to establish specific jurisdiction. The *Nicastro* Court clarified the meaning of its past use of the "stream of commerce" metaphor—whereby a defendant "plac[es] goods into the stream of commerce with the expectation that they will be purchased by consumers within the forum State"—in determining whether an out-of-state defendant had purposefully availed itself of the laws of a forum state. *See id.* at 2780 (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 111-12, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)). The Court stated that so placing goods in the stream of commerce

> may indicate purposeful availment. But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum— itself an unexceptional proposition—as where manufacturers or distributors "seek to serve" a given State's market. The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 2788 (internal citations, alterations, and quotation marks omitted).

Consistent with the foregoing, the courts in the Third Circuit "undertake a three-part inquiry" in determining whether specific jurisdiction exists:

> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King*[, 471 U.S. at 472, 105 S. Ct. at 2182]. Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414, 104 S. Ct. at 1872; *O'Connor*, 496 F.3d at 317.

12

> And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S. Ct. at 160).

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

Here, it is arguable that Union Pacific availed itself of Pennsylvania in several ways. By employing people here, soliciting job applicants here, and contracting with other carriers to ship goods to Pennsylvania, one could plausibly argue that they "deliberately targeted" the Pennsylvania forum. *See O'Connor*, 496 F.3d at 317 ("[For purposes of showing purposeful availment, p]hysical entrance is not required. . . . But what is necessary is a deliberate targeting of the forum.").

However, even if this is so, the second prong cannot apply. There is no evidence that the acts constituting the purposeful availment "arise out of relate to" the circumstances underlying this litigation. Instead, the allegations before the Court show that this litigation arises out of an accident in Oklahoma. (Compl., Doc. 1, at ¶ 17.) Moreover, DeAngelo's contract with Union Pacific was made "to perform certain vegetation control services at public grade crossings throughout [Union Pacific's] railroad system," (*id.* at ¶ 21), which, as discussed above, is based entirely in the western states. (*See also* Doc. 37 at 10 (noting that "none of the work specified in the contract was performed in Pennsylvania (or Nebraska)").) While it is true that DeAngelo Brothers is a Pennsylvania corporation, (Compl. at ¶ 5), its president's sworn affidavit states that DeAngelo only submitted a bid for

13

the Union Pacific contract "after seeing [an] online request for proposal," (*see* Doc. 15-2 at ¶ 2). In so doing, he states that DeAngelo Brothers "reached out to Union Pacific in Nebraska. Union Pacific did not approach [DeAngelo Brothers] in Pennsylvania." (*Id.*) And while DeAngelo did procure the insurance policies at issue here—presumably from its Pennsylvania offices—to cover Union Pacific as well as itself, these policies solely cover the work that was subject to the contract between Union Pacific and DeAngelo: that is, work done entirely outside of Pennsylvania. (*See generally* Compl. at ¶¶ 21-43; *see also id.*, Ex. C (American Home policy); *id.*, Ex. D (Colony policy).)

Therefore, even if the Court were to agree with Plaintiffs' factual hypothesis that DeAngelo executed the contract, received payments under it, and/or negotiated its terms by telephone from its Pennsylvania headquarters, (*see* Doc. 37 at 10-12), the ultimate conclusion would not change. None of these are activities that demonstrate an attempt by Union Pacific to avail itself of the benefits and protections of Pennsylvania law. DeAngelo's residency would be irrelevant to Union Pacific under such circumstances, given that the contract entirely concerns activities outside of Pennsylvania. Thus, all else being equal, whether DeAngelo was a Pennsylvanian, Floridian, French, or Japanese corporation (or indeed any other kind) would be of no instance to Union Pacific and would not be expected to have any impact on the rights and duties at issue under the contract.

### d. Jurisdictional Discovery

The Plaintiffs request that, if the Court does not find that Pennsylvania may maintain jurisdiction over Union Pacific, they "should be permitted to conduct jurisdictional discovery in order to refute Union Pacific's contention that it is not subject to personal jurisdiction in Pennsylvania." (Doc. 37 at 2; see also Doc. 45 at 12-13.) The Third Circuit has "explained that if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'" Metcalfe, 566 F.3d at 336 (quoting Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

While the Court does not now believe that personal jurisdiction exists based on the materials provided thus far, it also does not believe that Plaintiffs' claim is "clearly frivolous." Therefore, the Court will permit jurisdictional discovery rather than dismiss Union Pacific as a defendant at this time. The parties shall have ninety days to conduct discovery relevant to Union Pacific's contacts with Pennsylvania, in order to provide a fuller record as to whether general and/or specific jurisdiction exist.

In the interim, Union Pacific's Motion to Dismiss will be denied without prejudice. Union Pacific will be granted leave to resubmit its Motion at the close of jurisdictional discovery in the event that Union Pacific believes, upon the close of jurisdictional discovery, that there has been no material change to the facts discussed in this Opinion.

## V. Conclusion

Based on the foregoing considerations, Defendant Union Pacific's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 15) is **DENIED WITHOUT PREJUDICE**, with leave to resubmit at the close of jurisdictional discovery. A separate Order follows.

*[signature]*
Robert D. Mariani
United States District Judge