IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLONY NATIONAL INSURANCE CO. and AMERICAN HOME ASSURANCE CO., | : | |
| Plaintiffs, | : | |
| v. | : | 3:13-CV-00401 |
| | : | (JUDGE MARIANI) |
| DeANGELO BROTHERS, INC. and UNION PACIFIC RAILROAD CO., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Renewed Motion to Dismiss for Lack of Personal

Jurisdiction (Doc. 69), filed by Defendant Union Pacific Railroad Company in this

declaratory judgment action.  For the reasons discussed below, the Court will grant the

Motion.

### II.    Factual Background and Procedural History

The alleged factual background of this case is laid out in detail in the Court's

Memorandum Opinion denying Defendant DeAngelo Brothers' Motion to Dismiss or to Drop

a Party ("the DeAngelo Opinion"). (*See* Mem. Op., Mar. 21, 2014, Doc. 53, at 1-6.)  That

discussion is incorporated herein.  By way of summary, the case stems from the settlement

of a lawsuit arising out of a fatal accident in which a Union Pacific Railroad train struck a car

containing several passengers at a Union Pacific grade crossing in Oklahoma ("the

Oklahoma action"). Defendant DeAngelo Brothers allegedly contracted with Union Pacific

to perform certain vegetation control services at the grade crossing in question and, as part

of that contract, agreed to indemnify Union Pacific for liability arising out of injuries and

deaths that DeAngelo (but not Union Pacific) caused. To this end, it procured commercial

general liability insurance from Plaintiff American Home Assurance Company and

commercial liability umbrella insurance from Plaintiff Colony National Insurance Company.

After the accident, certain survivors filed the Oklahoma action against Union Pacific. Union

Pacific ultimately settled this Oklahoma action, in connection with which it attempted to

receive indemnification from Colony. Colony, however, refused, arguing that (1) Union

Pacific and not DeAngelo was most at fault for the collision, and (2) Union Pacific did not

properly cooperate with Colony in the investigation or settlement of the case. Colony

therefore brought the instant declaratory judgment action against Union Pacific and

DeAngelo in the Middle District of Pennsylvania ("the Pennsylvania action"), in order to

specify the respective rights of the parties. American Home later intervened as a Plaintiff.

A related case, involving the same four parties but initiated by Union Pacific against the

other three as defendants, was filed shortly thereafter in the District of Nebraska ("the

Nebraska action"). The District Court stayed the Nebraska action pending our resolution of

the instant Motion.

2

DeAngelo Brothers and Union Pacific both filed Motions to Dismiss the Pennsylvania action. (See Docs. 7 (DeAngelo); 15 (Union Pacific).) DeAngelo's Motion argued that it was not a proper party to this action, because the declaratory judgment action only implicates Colony and Union Pacific's contractual rights with respect to each other, and do not implicate DeAngelo's rights with respect to either. This Court nonetheless found that a justiciable controversy between DeAngelo and the Plaintiffs existed, because our construction of the terms of the insurance contract between Colony and Union Pacific would have a direct impact on DeAngelo's rights in the Nebraska action, which would resume against DeAngelo if the Court were to drop DeAngelo as a party from this case. (See Doc. 53 at 12-17.) It therefore denied DeAngelo's Motion.

Union Pacific's Motion to Dismiss challenged personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). As discussed in the Court's Opinion ("the Union Pacific Opinion" or "the original Opinion"), Union Pacific is incorporated in Delaware with a primary place of business in Nebraska. (Mem. Op., Mar. 28, 2014, Doc. 55, at 2.) Union Pacific's briefs further argued that it

has no offices in Pennsylvania. It does not run its trains through Pennsylvania. It does not pay corporate income or franchise tax to Pennsylvania. It does not advertise specifically to Pennsylvania citizens or corporations. It does not maintain an agent in Pennsylvania. In summary, Union Pacific Railroad does not "continuously and systematically" conduct any business in Pennsylvania.

3

(*Id.* (quoting Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 33, at 9-10) (internal citations

omitted).)  In the same vein, the Court was also presented with an affidavit by DeAngelo

Brothers' President Paul DeAngelo, which stated that Union Pacific signed its contract

with DeAngelo outside of Pennsylvania and that all work under the contract was

performed outside Pennsylvania. (*See id.* at 3.) Mr. DeAngelo stated that his company

entered into the contract with Union Pacific after Union Pacific opened an online bidding

process to which DeAngelo Brothers submitted the winning bid. (*See id.* at 2-3.) Thus,

he averred, DeAngelo reached out to Union Pacific in Nebraska; Union Pacific did not

approach DeAngelo in Pennsylvania. (*Id.* at 3.)

The Court considered several other bases for personal jurisdiction, which it

summarized as follows:

> First, Union Pacific entered into a "five-year, multi-million dollar contract with"
> DeAngelo Brothers, a Pennsylvania corporation. (*See* Pl. Colony Nat'l Ins.
> Co.'s Brief in Opp. to Union Pac. R.R. Co.'s Mot. to Dismiss, Doc. 37, at 9.)
> This contract, it is reasonable to assume, was signed by DeAngelo Brothers
> in Pennsylvania and would have required significant correspondence between
> Union Pacific's Nebraska offices and DeAngelo's Pennsylvania offices. (*See
> id.* at 10-12.) Colony concludes that, through these acts, Union Pacific willing
> [*sic*] subjected itself to jurisdiction in Pennsylvania. (*See id.* at 15.)
>
> Second, Colony points to several documents which it believes
> "demonstrate unequivocally that Union Pacific engages in economic activity
> in, and has continuous and systematic contacts with, various states east of
> the Mississippi [River] including Pennsylvania." (*Id.* at 17.) To this end, it
> provides a screenshot from Union Pacific's website, which advertises under
> the heading "Where Can I Ship?" that

4

> Union Pacific operates 32,000 miles of track covering 23 states
> in the western two-thirds of the country. And when we can't
> transport your products on our own tracks, we have
> relationships with nearly 200 shortline and other Class I
> railroads, as well as trucking companies, to make sure our
> customers are covered coast-to-coast. . . . Factor in ocean
> carriers and you can use UP to ship to virtually any destination
> worldwide.

(*Id.*, Ex. D, at 1.) Likewise, a Form 10-K report filed by Union Pacific with the Securities and Exchange Commission describes its railroad routes as "linking Pacific Coast and Gulf Coast ports with the Midwest and eastern U.S. gateways." (*Id.*, Ex. E, at 6). The report adds that Union Pacific "serve[s] the western two-thirds of the country and maintain[s] coordinated schedules with other rail carriers to move freight to and from the Atlantic Coast" and other regions across North America. (*Id.*)

"With respect to Union Pacific's activities as a transporter of freight in states like Pennsylvania where it does not operate trains or own rails," Colony also provides the Court with the case numbers of three actions in the federal district courts of Pennsylvania "where Union Pacific has filed suit . . . against a Pennsylvania corporation or limited liability company based on its alleged failure to pay Union Pacific's freight charges when due." (*Id.* at 18.) Colony argues that "[b]ased solely on Union Pacific's own allegations in these lawsuits, this Court has a reasonable basis for concluding that Union Pacific routinely engages in commerce in the Commonwealth." (*Id.* at 19.) As noted in American Home's brief, the purpose of disclosing these cases is not to argue that Union Pacific has waived jurisdictional objections; it is only to show, by Union Pacific's own previously sworn admissions, that Union Pacific continuously transacts business in Pennsylvania. (*See* Am. Home Assurance Co.'s Brief in Opp. to Union Pac. R.R. Co.'s Mot. to Dismiss, Doc. 45, at 7.)

Finally, Colony argues that the fact that three Union Pacific employees live in Pennsylvania is likewise sufficient to establish contacts supporting jurisdiction. (*See* Doc. 37 at 19-20.) In screenshots from the Union Pacific website, dated April 19, 2013, Union Pacific was soliciting job applications for two apparently additional positions located in Philadelphia, Pennsylvania: an administrative assistant and a control-systems engineer. (*Id.*, Ex. K, at 5-8.) As of the date of this Opinion, a job seeker can still access the Union Pacific website to search for jobs in Pennsylvania (and, indeed, for jobs in all states

except West Virginia), but there are no Pennsylvania openings posted. *See*
UNION PACIFIC, *Careers*, https://up.jobs/index.html (click "Search Jobs;" then
choose "Pennsylvania – PA" from the dropdown menu entitled "State Only;"
then click "Add").

(Doc. 55 at 4-6 (footnotes omitted).)

Ultimately, however, the Court found that these allegations were not enough to make

out a *prima facie* case for either general or specific personal jurisdiction. As to general

jurisdiction, it concluded that the alleged contacts, even if accurate, do not indicate that

Union Pacific is "essentially at home" in Pennsylvania, as would be required under Supreme

Court precedent. (*Id.* at 10.) As to specific jurisdiction, the Court concluded that "one could

plausibly argue that" Union Pacific purposefully availed itself of Pennsylvania law, but that,

even if that is so, specific jurisdiction would still fail because "[t]here is no evidence that the

acts constituting the purposeful availment 'arise out of [or] relate to' the circumstances

underlying this litigation," i.e., a declaration of non-Pennsylvanians' rights under an

insurance policy after the settlement of an Oklahoma tort action in an Oklahoma court. (*Id.*

at 13.)

But even though the Court concluded that it "does not now believe that personal

jurisdiction exists based on the materials provided thus far," it did not grant the Motion to

Dismiss. Instead, in accordance with the Third Circuit's directive in *Metcalfe v. Renaissance*

*Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009), it allowed the Plaintiffs the opportunity to

conduct jurisdictional discovery "in order to aid [them] in discharging [their] burden" of

demonstrating the existence of personal jurisdiction. (*See* Doc. 55 at 15 (quoting *Metcalfe*,

6

566 F.3d at 336).) The Court then denied Union Pacific's Motion with leave to renew after the close of jurisdictional discovery. (*Id.*)

Jurisdictional discovery is now closed and Union Pacific renewed its Motion. (*See* Doc. 69.) In response, the Plaintiffs[1] assert several newly discovered facts which they believe give rise to jurisdiction.

First, the Plaintiffs argue that Paul DeAngelo's representations as to the formation of the contract between DeAngelo Brothers and Union Pacific were inaccurate. (*See* Colony Br. in Opp. to Mot. to Dismiss, Doc. 88, at 7.) Whereas DeAngelo originally represented that his company reached out to Union Pacific in Nebraska, Union Pacific representative Mark Sudeta testified during discovery that, in fact, it was Union Pacific that first "invited over a dozen companies," including DeAngelo, to bid for the vegetation contract in 1999. (Mark Sudeta Dep., Doc. 88-4, at 86:4-9; *see also* Doc. 88-6 (listing thirteen contractors to whom bid invitations were sent).) Union Pacific chose which companies to target after conducting "market research" on various factors, (*id.* at 90:10-21), and then sent each company a packet of materials relevant to the bid, (*id.* at 87:3-21). Ultimately, Union Pacific accepted DeAngelo Brothers's bid, but Sudeta did not recall any further negotiations, given that "we had provided a sample form of agreement with our bid package." (*Id.* at 94:10-19.) In 2005, Union Pacific renewed its contract with DeAngelo without going through the

---

[1] For the ease of exposition, the Court will consider Colony and American Home's arguments together, and will refer to them collectively as "Plaintiffs' arguments" unless there is reason to believe that the two Plaintiffs are not in precise agreement on a given point.

ordinary national bidding process. (*See id.* at 77:6-12; Paul DeAngelo Dep., Doc. 88-5, at

41:2-42:9.)  Sudeta testified that,

> [a]t that point in time, it appears that DBI was doing a very good job . . . . So
> based on our internal review, we went forward internally and got approvals at
> senior levels of our company to proceed with doing another five-year contract
> with DBI without going through a formal bid process.

(Doc. 88-4 at 78:16-25.)   This second contract was in place at the time of the

accident.

Second, Colony points to testimony by DeAngelo Brothers's corporate designee

Neal DeAngelo that DeAngelo Brothers understood its insurance policy with Colony to cover

"all the work we do" nationwide, (*see* Neal DeAngelo Dep., Doc. 88-8, at 62:25), and "not

simply those [risks] that arose out of the work that DBI was doing for Union Pacific," (*id.* at

62:19-24 (statement of Attorney Michael Murphy, to which deponent expresses

agreement)).  The fact that DeAngelo Brothers did work in Pennsylvania during the time of

coverage, (*id.* at 64:10-65:19), therefore implies that DeAngelo expected the Colony

coverage to also cover actions taken in Pennsylvania.

Third, Colony notes other testimony by Paul DeAngelo that on "at least and possibly

two occasions representatives on behalf of Union Pacific . . . traveled to DBI's offices in

Pennsylvania." (Doc. 88 at 10 (citing Doc. 88-5 at 59:2-60:6).)

Fourth, American Home argues, that "whereas Union Pacific previously

acknowledged only three Pennsylvania employees, in fact, as of 2013, it had at least five

marketing and sales representatives in Pennsylvania and an additional five employees who

list Pennsylvania as their domicile." (Am. Home Br. in Opp. to Mot. to Dismiss, Doc. 89, at 5-6 (citing Doc. 89-7, Ex. P, "Employees Claiming Pennsylvania as Domicile on W-2").)

Finally, Colony argues that discovery has uncovered certain communications originating from DeAngelo's office in Pennsylvania which were sent to Union Pacific's offices in Nebraska. These included phone calls, correspondence, and amendments to the contract through change orders pursuant to the amendment protocol specified in the original contract. (Doc. 88 at 10-11.) Colony also states that DeAngelo received payments in Pennsylvania from Union Pacific for work performed under the contract. (*Id.* at 11.) This fifth source of evidence, however, even if newly discovered, is unhelpful to the Renewed Motion. This Court never doubted that DeAngelo Brothers conducted its ordinary business routines from its own office in Pennsylvania, nor would it have been reasonable to entertain such doubts. The Court explicitly stated that, even assuming such actions occurred, they would be irrelevant to the issue of personal jurisdiction over Union Pacific. (*Cf., e.g.*, Doc. 55 at 14 ("[E]ven if the Court were to agree with Plaintiffs' factual hypothesis that DeAngelo executed the contract, received payments under it, and/or negotiated its terms by telephone from its Pennsylvania headquarters, the ultimate conclusion would not change. None of these are activities that demonstrate an attempt by Union Pacific to avail itself of the benefits and protections of Pennsylvania law.").) We find no reason to modify this conclusion.

The Court will, however, consider to what degree, if any, the first four sources of

newly discovered evidence change the procedural posture of this case and cause us to

reconsider our original jurisdictional conclusions.

## III.   Standard of Review

As the Court stated in its Opinion denying Union Pacific's original 12(b)(2) Motion:

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to
dismiss a complaint for lack of personal jurisdiction over itself. Fed. R. Civ. P.
12(b)(2). "In deciding a motion to dismiss for lack of personal jurisdiction, we
take the allegations of the complaint as true. But once a defendant has
raised a jurisdictional defense, a plaintiff bears the burden of proving by
affidavits or other competent evidence that jurisdiction is proper." *Dayhoff,
Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (internal citations
omitted). Because a 12(b)(2) motion "is inherently a matter which requires
resolution of factual issues outside the pleadings," once the defense has been
raised, the plaintiff must rely on "competent evidence" and not merely "rely on
the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)
motion to dismiss for lack of *in personam* jurisdiction." *Time Share Vacation
Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). However, if
"the district court does not hold an evidentiary hearing, 'the plaintiff[s] need
only establish a *prima facie* case of personal jurisdiction.'" *Metcalfe v.
Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting
*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3rd Cir. 2007)).

(Doc. 55 at 6-7.)

As the quoted text implies, the fact that the parties have engaged in jurisdictional

discovery does not alter Plaintiffs' burden to provide only a *prima facie* showing that

jurisdiction exists, given that no evidentiary hearing was held, or indeed requested. *See

also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (applying the

"*prima facie*" standard "[w]here plaintiff has engaged in jurisdictional discovery, but no

evidentiary hearing was conducted"); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d

1212, 1214 (6th Cir. 1989) ("When the trial court has determined that the motion to dismiss

for lack of personal jurisdiction can be decided upon these written submissions [i.e., 'by

affidavit or otherwise'] . . . [the plaintiff's] burden is merely that of making a *prima facie*

showing that personal jurisdiction exists.").

IV.   **Analysis**

a.  **Personal Jurisdiction**

"A federal district court may assert personal jurisdiction over a nonresident of the

state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l

Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). United

States Supreme Court decisions in the past several decades "have differentiated between

general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear

Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d

796 (2011). Pennsylvania law authorizes general personal jurisdiction over a corporation

when the corporation carries on "a continuous and systematic part of its general business

within this Commonwealth," 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii), and authorizes

specific jurisdiction over "all persons [including corporations] who are not within the scope of

section 5301 . . . to the fullest extent allowed under the Constitution of the United States

[which] may be based on the most minimum contact with this Commonwealth allowed under

the Constitution of the United States," 42 Pa. Cons. Stat. Ann. § 5322(b).

11

Both general and specific jurisdiction were in dispute in the original Motion and both

appear to remain in dispute in the Renewed Motion.

### i. General Jurisdiction

As discussed in more detail in the Court's first Opinion, (see Doc. 55 at 8-11),

general jurisdiction exists when a defendant's contacts with the forum state are so

"'continuous and systematic' as to render [it] *essentially at home in the forum State.*"

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* ___ U.S. ___, 131 S. Ct. 2846, 2851,

180 L. Ed. 2d 796 (2011). The Court originally found that the

> facts that Union Pacific has entered into a series of contracts with
> Pennsylvania companies (as attested to by its various lawsuits here), that it
> maintains several employees in Pennsylvania, and that it contracts to ship
> goods to Pennsylvania, while establishing some consistent contacts with the
> forum state, are insufficient to render it "essentially at home" here.

(Doc. 55 at 10.)

In its Opposition to the Renewed Motion, Colony appears to have abandoned its

argument on the existence of general jurisdiction. American Home, conversely, does not.

(*See* Doc. 89 at 17-19.) Nevertheless American Home gives no indication that the Court's

original determination was mistaken. Nor does it demonstrate how the newly discovered

evidence operates to render Union Pacific "essentially at home" in Pennsylvania. At most,

the newly discovered evidence shows that Union Pacific has greater contacts with

Pennsylvania than originally believed. But the newly discovered facts that Union Pacific

reached out to a Pennsylvania company, twice sent employees here to meet with DeAngelo

12

Brothers, and employs several more people here than originally known by no means

renders Union Pacific "essentially at home" under Supreme Court precedent or the

common-sense meaning of that term.

Accordingly, the Court finds that Plaintiffs have still failed to make a *prima facie* case

for the existence of general jurisdiction. To the extent that personal jurisdiction exists, it

must be specific jurisdiction.

### ii. Specific Jurisdiction

However, the Court finds nothing by way of jurisdictional discovery that would alter

its original conclusion that specific jurisdiction does not exist. Consistent with Supreme

Court precedent, as discussed in greater detail in this Court's original Opinion, (*see* Doc. 55

at 11-14), the courts of the Third Circuit "undertake a three-part inquiry" in determining

whether specific jurisdiction exists:

> First, the defendant must have "purposefully directed [its] activities" at the
> forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174,
> 2182, 85 L. Ed. 2d 528 (1985). Second, the litigation must "arise out of or
> relate to" at least one of those activities. *Helicopteros*, 466 U.S. [408,] 414,
> 104 S. Ct. [1868,] 1872[, 80 L. Ed. 2d 404 (1984)]; *O'Connor*, 496 F.3d at
> 317. And third, if the first two requirements have been met, a court may
> consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair
> play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S. Ct. at
> 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S. Ct. at 160).

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir.

2009).

Though the new evidence produced in jurisdictional discovery does make the lack of

specific jurisdiction somewhat less clear than it was when the Court wrote its original Union Pacific Opinion, the Court still cannot conclude that it materially changes our original analysis under *D'Jamoos* and the relevant Supreme Court case law.[2]

As before, (*see* Doc. 55 at 13), the Court is willing to assume for the sake of argument that Union Pacific purposefully directed its activities at the forum, e.g., by employing people here, by reaching out to Pennsylvania corporation DeAngelo Brothers for purposes of entering into a contract, by contracting with local affiliates to ship goods here, and so on. *Cf. O'Connor*, 496 F.3d at 318 (finding that a Barbados hotel's acts of "continu[ing] to cultivate [its] relationship [with former patrons] by mailing seasonal newsletters to their Pennsylvania home" and "mail[ing] them a brochure and trad[ing] phone calls with them for the purpose of forming an agreement to render spa services" constituted a deliberate act of "reach[ing] into Pennsylvania to target two of its citizens" and therefore "establish purposeful contact with Pennsylvania"). If the limited actions discussed in *O'Connor* are sufficient to establish purposeful availment, then Union Pacific's slightly broader but still limited actions could very likely establish purposeful availment here as well.

But, also as before, "even if this is so, the second [*D'Jamoos*] prong cannot apply," because there "is no evidence that the acts constituting the purposeful availment 'arise out of relate to' the circumstances underlying this litigation." (*See* Doc. 55 at 13.) It is important to recall that the litigation at issue here is a declaratory judgment action filed by a Virginia

---

[2] This case law includes the Supreme Court's recent decision in *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), which the Court did not cite in its original Opinion, but which is consistent with all of the authority cited therein.

corporation and later joined by a New York intervenor, to determine rights to an insurance policy, which, insofar as it related to Union Pacific at all, indemnified Union Pacific for conduct that was contemplated to—and in fact did—take place entirely outside of Pennsylvania. Whereas the actions constituting the assumed purposeful availment concern the procurement and performance of an underlying service contract for vegetation control, the "circumstances underlying this litigation" concern non-Pennsylvanian insurance companies' obligations to non-Pennsylvanian Union Pacific for an accident in Oklahoma. Even though it is assumed true that the Pennsylvania company DeAngelo Brothers obtained the relevant insurance policies with Union Pacific as a beneficiary, the merits of the actual underlying claim for indemnification does not implicate Pennsylvania law in any way, and therefore Union Pacific could not "reasonably anticipate being haled into court" here, as would be required to establish specific jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 558, 567, 62 L. Ed. 2d 490 (1980); Doc. 55 at 11; *cf. also Walden*, 134 S. Ct. at 1122 ("We have thus rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there.") (citing *Hanson v. Denckla*, 357 U.S. 235, 253-54, 78 S. Ct. 1228, 1240-41, 2 L. Ed. 2d 1283 (1958)).

Thus, and notwithstanding Plaintiffs' arguments to the contrary, the instant case is vitally different from *O'Connor v. Sandy Lane Hotel*, *supra*. The *O'Connor* holding was

15

based on the plaintiffs' claim that "Sandy Lane breached a duty that is *identical* to a contractual duty assumed by the hotel in Pennsylvania," which caused the Circuit to conclude that "[s]o intimate a link justifies the exercise of specific jurisdiction as a *quid pro quo* for Sandy Lane's enjoyment of the right to form binding contracts in Pennsylvania." *O'Connor*, 496 F.3d at 324. Conversely, the contract at issue in our own case is entirely distinct from and involves different legal obligations and binds different parties than the service contract that Union Pacific procured in Pennsylvania. And while it is true that Union Pacific never would have become a beneficiary of the Colony and American Home policies if it were not for its original contract with DeAngelo in Pennsylvania, "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." *Id.* at 323. That "more direct causal connection" is simply absent here.

Nor do the four categories of newly discovered evidence enumerated in section II, *supra*, change this analysis. Even accepting as true the propositions that Union Pacific originally formed the vegetation service contract by reaching out to DeAngelo in Pennsylvania and that Union Pacific representatives travelled to Pennsylvania on various occasions in connection with that contract, such facts would only establish jurisdiction in disputes involving that same contractual relationship. As already discussed, this case involves a different relationship to a different contract between different parties, meaning that discussions of forum contacts established as a result of the Union Pacific-DeAngelo Brothers contract are irrelevant and unhelpful.

16

Likewise, the newly-discovered fact that Union Pacific maintains ten employees in Pennsylvania—instead of the three to five previously believed, (see Doc. 55 at 6)—is another fact unrelated to the circumstances giving rise to this litigation. Even accepting the new number as true, there is no evidence that the ten employees had anything to do with the accident in Oklahoma or with Union Pacific's subsequent demand on the insurance policies. As such, the fact that five more employees (out of more than 45,000 Union Pacific employees nationwide) happen to work in Pennsylvania does not warrant the exercise of specific jurisdiction.

Finally, the fact that DeAngelo Brothers understood its insurance policy to cover all of its actions nationwide is again irrelevant to establish specific jurisdiction over its co-defendant, Union Pacific. "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." See Helicopteros, 466 U.S. at 417. Whether DeAngelo obtained indemnification through the Plaintiffs' policies for projects that it performed in Pennsylvania independently of Union Pacific can have no bearing on Union Pacific's rights, given that Union Pacific was apparently a stranger to all such projects.

Therefore, regardless of whether this Court would have personal jurisdiction over disputes involving the service contract between Union Pacific and DeAngelo Brothers, and notwithstanding the fact that it does have personal jurisdiction over all claims involving the Pennsylvanian DeAngelo Brothers, the Plaintiffs have failed to make a prima facie case that

17

the Court can exercise jurisdiction over Union Pacific in a declaratory judgment action that pits two non-Pennsylvania corporations against it.

Having found that Plaintiffs have not met their burden of proving jurisdiction over Union Pacific, the Court will grant Union Pacific's Motion to Dismiss.

### b. Claims against DeAngelo Brothers

Dismissing the action against Union Pacific, however, puts this case in an unusual posture, in that it dismisses the only defendant whose monetary interests are directly implicated in the Pennsylvania action, while leaving the one whose interests are considerably more attenuated. As discussed above, DeAngelo Brothers has no stake in the declaratory judgment action aside from the fact that a determination as to its responsibility for the accident could have a preclusive effect on the pending Nebraska tort action. But resolving DeAngelo's liability through a declaratory judgment issued in Pennsylvania would do nothing to promote the fair, just, and expeditious resolution of the parties' respective claims against each other, and would, if anything, frustrate such resolution. As the Court noted in its DeAngelo Opinion, though there are scenarios in which DeAngelo and the insurers' interests are indeed adverse to each other, (see Doc. 53 at 13), it is nonetheless true that, at least in the short-term in the Pennsylvania action, both the Plaintiffs and the Defendant have an interest in proving that Union Pacific was at fault for the accident, in that such a determination would minimize all three of their liabilities. Obviously, an action in which all plaintiffs and defendants have an interest in proving the same points against a

18

non-party is not appropriate for judicial resolution. Moreover, even if, as discussed in the

DeAngelo Opinion, the parties do have adverse interests, it appears unfair to potentially

bind DeAngelo to a judicial resolution of an issue that only concerns it tangentially,

especially when the primary defendant has already been dismissed.

This problem, however, is easily solved. The Declaratory Judgment Act states that

"any court of the United States . . . *may* declare the rights and other legal relations of any

interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The

Act "makes clear that district courts possess discretion in determining whether and when to

entertain an action under the Declaratory Judgment Act, even when the suit otherwise

satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S.

277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995). This discretion is "substantial."

*Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. 2014).

> [W]hen determining whether to exercise DJA jurisdiction . . . a district court
> should guide its exercise of sound and reasoned discretion by giving
> meaningful consideration to the following factors to the extent they are
> relevant:
>
> > (1) the likelihood that a federal court declaration will resolve the
> > uncertainty of obligation which gave rise to the controversy;
> > (2) the convenience of the parties;
> > (3) the public interest in settlement of the uncertainty of obligation;
> > (4) the availability and relative convenience of other remedies;
> > (5) a general policy of restraint when the same issues are pending in a
> > state court;
> > (6) avoidance of duplicative litigation;
> > (7) prevention of the use of the declaratory action as a method of
> > procedural fencing or as a means to provide another forum in a race
> > for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146. This list is non-exhaustive and may require consideration of additional lines of cases when relevant. *See generally id.* at 146-47. The Court is authorized to decline jurisdiction on these grounds *sua sponte. See State Auto Ins. Cos. v. Summy,* 234 F.3d 131, 136 (3d Cir. 2000).[3]

Here, the Court believes it is clear that declining jurisdiction best balances all the interests implicated in this declaratory judgment action. Retaining jurisdiction over DeAngelo would create duplicative litigation; would not lead to the resolution of the entire matter, but would only add a new layer of procedural complication; and would unnecessarily create *res judicata* against DeAngelo in Nebraska, when DeAngelo's rights in Pennsylvania are only tangentially related to the primary dispute between the insurers and Union Pacific. As opposed to these palpable dangers, the Court sees no benefit to retaining jurisdiction over DeAngelo Brothers, nor can it understand how the Plaintiffs would want to expend more time and energy litigating an issue in Pennsylvania that will not resolve their dispute against Union Pacific.

The Court therefore finds that, in dismissing Union Pacific as a defendant, its original rationale for keeping DeAngelo Brothers in the action no longer applies and that continuing

---

[3] Even if this were not true, the parties have already had ample opportunity to discuss issues raised in connection with the propriety of keeping DeAngelo as a party during the briefing period for DeAngelo's Motion to Drop a Party. (*See* Docs. 7; 9; 14; 34.)

to exercise jurisdiction would only frustrate our duty to "secure the just, speedy, and

inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Accordingly, the Court declines to exercise jurisdiction over the remainder of the case under

the Declaratory Judgment Act, and the Pennsylvania action will be closed.

## V.    Conclusion

For the foregoing reasons, Union Pacific's Renewed Motion to Dismiss (Doc. 69) is

**GRANTED** and the Court will **DECLINE** jurisdiction over the remainder of this declaratory

judgment action.  A separate Order follows.

Robert D. Mariani
United States District Judge